

LAW OFFICES OF GEORGE N. PROIOS, PLLC
Attorneys for Plaintiff
55 Broadway, Suite 1501
New York, NY 10006
(212) 279-8880

*JUDGE SULLIVAN*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 14 CV 4293

———————————————————

ONIRATO NAVIGATION LTD.,

               Plaintiff,

    v.

SRI LALITHA ENTERPRISES INDUSTRIES
PRIVATE LIMITED,

               Defendant,

    and

STATE BANK OF INDIA,

HOUSE OF SPICES (INDIA) INC.,

               Garnishees.

———————————————————

14 CV 4293 (RJS)
ECF Case

**VERIFIED COMPLAINT WITH
REQUEST FOR ISSUANCE OF
OF  PROCESS OF MARITIME
ATTACHMENT AND GARNISHMENT**

      Plaintiff Onirato Navigation Ltd. ("Onirato") complains of the Defendant Sri Lalitha Enterprises Industries Private Limited ("Sri Lalitha") and alleges upon information and belief as follows:

### JURISDICTION AND VENUE

      1.    This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breach of a maritime charter party contract.

2.     This complaint is further brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in that it involves a maritime transaction within the meaning of 9 U.S.C. § 1 and seeks to obtain security in assistance of contemplated London maritime arbitration proceedings.

3.     At all material times, Onirato was and is a company organized and existing under the laws of the Marshall Islands.

4.     At all material times, Sri Lalitha was and is a company organized and existing under the laws of India.  Sri Lalitha is not "found" either in this, or in any "convenient adjacent jurisdiction," within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B").

5.     At all material times, Garnishee State Bank of India ("SBI") was and is an Indian entity, with branch offices located in this District.  On information and belief, Onirato reasonably believes that SBI holds accounts which are the property of and/or owing to Sri Lalitha.

6.     At all material times, Garnishee House of Spices (India), Inc. ("Spice") was and is a corporation registered to do business in the State of New York and with its principal place of business in this District at 127-40 Willets Point Blvd., Flushing, New York 11368.  On information and belief, Onirato reasonably believes that Sri Lalitha does business with Spice and that Spice holds accounts which are the property of and/or owing to Sri Lalitha.

## FACTUAL BACKGROUND

7.     Onirato is the owner of the M/V AEOLOS.

8.     On or about December 23, 2013, Onirato agreed to charter the Vessel to Sri Lalitha pursuant to a Voyage Charter.  A copy of the Voyage Charter is attached hereto as Exhibit A.

9.    Box 12 of the Voyage Charter identifies the weight of the cargo to be carried on the Vessel as "ABOUT 28,750 METRIC TONS 4% MORE OR LESS OWNERS OPTION."

10.    Clause 44 of the Voyage Charter provides that the permissible laytime associated with discharging the cargo would not exceed "1,500 mts per weather working day."

11.    On or about January 30, 2014, Sri Lalitha received a Notice of Readiness (a copy of which is attached hereto as Exhibit B) from the Vessel's manager, Alexandria Shipping (HELLAS) S.A. which stated in relevant part as follows:

> Dear Sirs,
>
> Please be advised that Mv "Aeolos" has arrived at your port on 30-01-2014 at 1330 local time or 1230 utc and she is in all respects ready to commence discharging her cargo of BAGGED RICE of 29,250.00 mts Net Weight (585,000 Bags) as per all terms and conditions of relevant Charter Party.

12.    Pursuant to the Notice of Readiness, and in accordance with Clause 44 of the Voyage Charter, Sri Lalitha was permitted 19 days, 13 hours, and 18 minutes of laytime for discharge operations.  Upon completion of discharge, Sri Lalitha was required to redeliver the Vessel to Onirato.

13.    In breach of its contractual obligations, Sri Lalitha has to date failed to redeliver the Vessel to Onirato.  On information and belief, the Vessel remains berthed in Nigeria.

14.    As detailed in the Laytime Statement (a copy of which is attached hereto as Exhibit C), 127 days have elapsed since the Vessel arrived at port on January 30, 2014.  Of those days, only 19 days, 13 hours, and 18 minutes are demurrage-free pursuant to the terms of the Voyage Charter.

15.    To date, 109 days of demurrage has accrued as detailed in the Laytime Statement.

16.    Clause 36 of the Voyage Charter provides that demurrage accrues at $12,000 per day.  The accrued demurrage due and owing for 109 days totals $1,307,600.

3

17.     Demurrage continues to accrue at a daily rate of $12,000 until the Vessel is redelivered to Onirato.

### Count I – Breach of Maritime Contracts

18.     Onirato incorporates the above paragraphs as if fully set forth herein.

19.     Sri Lalitha has breached its maritime contracts as set out above.  Despite repeated demand, Onirato remains unpaid.

20.     Onirato therefore demands judgment, as set out more fully below.

### Count II – Maritime Attachment and Garnishment (Rule B)

21.     Onirato incorporates the above paragraphs as if fully set forth herein.

22.     Onirato seeks issue of process of maritime attachment so that it may obtain security for its claims including its contractual attorneys' fees and costs.  No security for Onirato's claims has been posted by Sri Lalitha or anyone acting on its behalf to date.

23.     Sri Lalitha cannot be found within this district within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to SBI and/or Spice.

**WHEREFORE**, Onirato prays:

A.     That process in due form of law issue against Sri Lalitha, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That since Sri Lalitha cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Sri Lalitha's tangible or intangible property or any other funds held by any garnishee, which are due and owing to Sri Lalitha up to the amount

of at least **$1,307,600** to secure Onirato's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

      C.     That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed.R.Civ.P. 4(c) to serve process of Maritime Attachment and Garnishment in this action;

      D.     That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof; and

      E.     That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, New York
      June 13, 2014.

                               LAW OFFICES OF GEORGE N. PROIOS, PLLC
                               Attorneys for Plaintiff

                               By:                                         
                               George N. Proios
                               55 Broadway, Suite 1501
                               New York, NY 10006
                               (212) 279-8880

OF COUNSEL:

J. Stephen Simms
Marios J. Monopolis
Simms Showers LLP
201 International Circle, Suite 250
Hunt Valley, Maryland 21030
(410) 783-5795

## VERIFICATION

STATE OF NEW YORK     )
                      :        ss.:
COUNTY OF NEW YORK    )

George N. Proios being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and am counsel to Plaintiff.

2.      I have read the foregoing Complaint and I believe the contents thereof are true.

3.      The reason this Verification is made by deponent and not by Plaintiff in that Plaintiff is foreign corporation, no officers or directors of which are within this jurisdiction.

4.      The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

                                    George N. Proios

Sworn to before me this
13   day of June, 2014


Notary Public


JON WERNER
NOTARY PUBLIC
02WE6149122
STATE OF NEW YORK
COMMISSION EXPIRES
JULY 3RD, 20 14

6

# EXHIBIT A

| 1. Shipbroker | |
|---|---|
| BRISK MARINE SERVICES LLP, INDIA<br>BIMCO REG NO. 138858<br>FAX: 91 124 2806230<br>EMAIL: BRISK@BRISKMARINE.COM | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "G E N C O N" |
| | 2. Place and date<br>NEW DELHI, 23RD DEC 2013 |
| 3. Owners/Place of business (Cl. 1)<br>ONIRATO NAVIGATION LTD.<br>THE TRUST COMPANY OF THE MARSHALL ISLANDS, INC.<br>TRUST COMPANY COMPLEX<br>AJELTAKE ROAD AJELTAKE ISLAND<br>PO BOX 1405<br>MAJURO, MH 96960 | 4. Charterers/Place of business (Cl. 1)<br>SRI LALITHA ENTERPRISES INDUSTRIES PRIVATE<br>LIMITED, VALUTHIMMAPURAM ROAD, PEDDAPURAM,<br>E.G (DIST), A.P., INDIA |
| 5. Vessel's name (Cl. 1)<br>MV AEOLOS | 6. GRT/NRT (Cl. 1)<br>-GRT: 19,882.00 / NRT: 10,476.00 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br><br>32,256 MT SS ON 10.568M | 8. Present position (Cl. 1)<br>SUBJECT VESSEL IS EXPECTED TO ARRIVE AT<br>KAKINADA ON ABOUT 25TH DECEMBER 2013<br>AFTERNOON WEATHER PERMITTING / ALL GOING<br>WELL. |
| 9. Expected ready to load (abt) (Cl 1)<br>25th December 2013 | |
| 10. Loading port or place (Cl. 1)<br>1 SAFE PORT  1/2 SAFE ANCHORAGE KAKINADA | 11. Discharging port or place (Cl. 1)<br>1SAFE PORT/ 1-2 SAFE BERTH ANCHORAGE, APAPA -<br>LAGOS, NIGERIA ALWAYS ACCESSIBLE ALWAYS<br>AFLOAT WHERE CHARTERERS GUARANTEE MIN 10.3M<br>BRACKISH WATER ARRIVAL DRAFT AND FREE<br>DISBURSEMENT ACCOUNT AT DISCHARGE PORT |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo"   (Cl. 1)<br>A cargo of:<br>ABOUT 28,750 METRIC TONS 4% MORE OR LESS OWNERS OPTION BAGGED RICE CARGO STOWAGE FACTOR 48/50 CUBIC<br>FEET /PER METRIC TON + SMALL QUANTITY OF EMPTY BAGS (UP TO A MAXIMUM OF 2 METRIC TONS WHICH NOT TO<br>COUNT AS FREIGHT). OWNERS CONFIRM TT VESSEL WILL NOT LOAD MORE THAN 30,084 METRIC TONS. | |
| 13. Freight rate (also state if payable on delivered or intaken quantity (Cl. 1)<br>FREIGHT USD 60.00 PER METRIC TON | 14. Freight payment (state currency and method of payment: also beneficiary<br>and bank account) (Cl. 4)<br>See Clause 29 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5;<br>also indicate if vessel is gearless)<br>POLYPROPYLENE MATTS/ DUNNAGE MATERIAL/ETC. TO BE FOR<br>CHARTERER'S/SHIPPER'S ACCOUNT. LAYING/ SECURING,<br>LASHING SEPARATION LABOUR AND LABOUR COSTS FOR<br>CHARTERERS/SHPRS ACCOUNT BUT OWNERS TO CONTRIBUTE<br>MAXIMUM USD 5,000 TOWARDS TO MATTS/DUNNAGE...ETC | 16. L A Y T I M E<br>a) for loading:<br>see Clause 25<br>b) for discharging:<br>see Clause 44<br>c) total laytime for loading/discharging: |
| 17. Shippers (Name and address) (Cl. 6) | |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>DEMURRAGE: USD 12,000 HALF DESPATCH WORKING TIME<br>SAVED BOTH ENDS | 19. Cancelling date (Cl. 10)<br>30 DEC 2013 |
| 20. Brokerage commission and to whom payable (Cl. 14)<br>COMM 2.5% + 1.25% TO BRISK MARINE SERVICES, INDIA + 1.25 ACE CHARTERING S.A. | |
| 21. Additional clauses covering special provisions, if agreed<br>Additional Clauses Nos. 18 - 60, both inclusive, and BIMCO ISM Clause are deemed fully incorporated herein and<br>form part of this Charter Party. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

## PART II
### " Gencon " Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or (intaken quantity as indicated in Box 13) at the rate stated in Box 13.

2. Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or
default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature of insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. Deviation Clause
The vessel has liberty to call at any port or ports in any order, for any purpose incl bunkering, to sail without pilots, to tow and or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight   see Clause 39
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.
Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

Loading and Discharging
(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.
The cargo being taken place by elevator, cargo to be put free in vessel's holds. Owners only paying lowering expenses.
Any pieces and or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense. The cargo to be received and/or Merchants at the risk and expense alongside the vessel not beyond the reach of her tackle.
(b) F.I.O. and free stowed/ tallied / secured / dunnaged and Charterers place at most protecting materials and construct aeration channels at the practice of the trade/intaned
The cargo shall be brought into the holds, loaded, stowed and trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if required and permitted, if not, the Charterers shall provide and pay for winchmen or shore and or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15.)
Indicate alternative (a) or (b), as agreed, in Box 15.

6. Laytime   see Clause 23, 24, 41, 42
(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting,—Sundays and holidays excepted, unless used, in which event time actually used shall count. The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time shall count.
(c) Commencement of Laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours afternoon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count. Time lost in waiting for berth to count as loading or discharging time, as the case may be.
Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage   see Clause 35
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. Bills of Lading   see Clause 33
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. Cancelling Clause, see also Clause 26
Should the vessel not be ready to load (whether in berth or not), on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. General Average and Arbitration   English Law to apply
General average to be settled in London according to York-Antwerp Rules, 1974, as amended 1990 and any subsequent amendments thereto Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners's servants (see clause 2).

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency   see Clause 40
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight deadfreight and demurrage earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contracts.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not being settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided
for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. War Risks ("Voywar 1950")
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure
on which or any part of which it appears that the Vessel her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at its loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever,
backwards or forwards although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master loading to
proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the Loading port, or

| | |
|---|---|
| 1 | 105 |
| 2 | 106 |
| 3 | 107 |
| 4 | 108 |
| 5 | 109 |
| 6 | 110 |
| 7 | 111 |
| 8 | 112 |
| 9 | 113 |
| 10 | |
| 11 | 114 |
| 12 | 115 |
| 13 | 116 |
| 14 | 117 |
| 15 | 118 |
| 16 | 119 |
| 17 | |
| 18 | 120 |
| 19 | 121 |
| 20 | 122 |

PART II
" Gencon " Charter (As Revised 1922 and 1976)
Including "F.I.O." Alternative, etc.

| | |
|---|---|
| last of the loading ports, if more than one, it appears that further | 205 |
| performance of the contract will subject the vessel, her Master and | 206 |
| crew or her cargo, to war risks, the cargo shall be discharged, or if | 207 |
| the discharge has been commenced shall be completed, at any safe | 208 |
| port in vicinity at the port of discharge as may be ordered by the | 209 |
| Charterers. If no such order shall be received from the Charterers | 210 |
| within 48 hours after the Owners have despatched a request by | 211 |
| telegram to the Charterers for the nomination of a substitute discharg- | 212 |
| ing port, the Owners shall be at liberty to discharge the cargo at | 213 |
| any safe port which lie may in their discretion decide on and such | 214 |
| discharge shall be deemed to be due fulfilment of the contract of | 215 |
| affreightment. In the event of cargo being discharged at any such | 216 |
| other port, the Owners shall be entitled to freight as if the discharge | 217 |
| had been effected at the port or ports named in the Bill(s) of Lading | 218 |
| at to which the Vessel may have been ordered pursuant thereto. | 219 |
| (f) (i) The Vessel shall have liberty to comply with any directions | 220 |
| or recommendations as to loading, departure, arrival, routes, ports | 221 |
| of call, stoppages, destination, zones, waters, discharge, delivery or | 222 |
| in any other way whatsoever (including any direction not to proceed) | 223 |
| which is given by the government of the nation under whose flag the | 224 |
| Vessel sails, or other government to whose laws the Owners are subject | 225 |
| to proceed to be ordered or otherwise, as specified direction may be | 226 |
| given. If as a result of any departure, thereby endangered in civil war, | 227 |
| hostilities or warlike operations or by any person or body acting or | 228 |
| purporting to act as or with the authority of any Government or | 229 |
| belligerent or of any such organized body or by any committee | 230 |
| person having under the terms of the war risk insurance on the | 231 |
| Vessel, the right to give any such directions or recommendations: If | 232 |
| by reason of or in compliance with any such direction or recom- | 233 |
| mendation, anything is done or is not done, such shall not be deemed | 234 |
| a deviation. | 235 |
| (b) If, by reason of or in compliance with any such directions or re- | 236 |
| commendation, the Vessel does not proceed to the port or ports | 237 |
| named in the Bill(s) of Lading or to which she may have been | 238 |
| ordered pursuant thereto the Vessel may proceed to any port as | 239 |
| directed or recommended or to any safe port which the Owners in | 240 |
| their discretion may decide on and there discharge the cargo. Such | 241 |
| discharge shall be deemed to be due fulfilment of the contract of | 242 |
| affreightment and the Owners shall be entitled to freight as if | 243 |
| discharge had been effected at the port or ports named in the Bill(s) | 244 |
| of Lading or to which the Vessel may have been ordered pursuant | 245 |
| thereto. | 246 |
| (k) All extra expenses (including insurance costs) involved in discharg- | 247 |
| ing cargo at the loading port or in reaching or discharging the cargo | 248 |
| at any port as provided in Clauses 4 and 5 (b) hereof shall be paid | 249 |
| by the Charterers and/or cargo owners, and the Owners shall have | 250 |
| a lien on the cargo for all moneys due under these Clauses. | |

| 17. | General Ice Clause | |
|---|---|---|
| | Port of loading | 251 |
| | (a) In the event of the loading port being inaccessible by reason of | 252 |
| | ice when vessel is ready to proceed from her last port or at any | 253 |
| | time during the voyage or on vessel's arrival or in case frost sets in | 254 |
| | after vessel's arrival, the Captain for fear of being frozen in is at | 255 |
| | liberty to leave without cargo, and this Charter shall be null and | 256 |
| | void. | 257 |
| | (b) If during loading the Captain, for fear of vessel being frozen in, | 258 |
| | deems it advisable to leave, he has liberty to do so with what cargo | 259 |
| | he has on board and to proceed to any other port or ports with | 260 |
| | option of completing cargo for Owners' benefit for any port or ports | 261 |
| | including port of discharge. Any part cargo thus loaded under this | 262 |
| | Charter to be forwarded to destination at vessel's expenses but | 263 |
| | against payment of freight, provided that no extra expenses be | 264 |
| | thereby caused to the Receivers, freight being paid on quantity | 265 |
| | delivered (in proportion if lumpsum), all other conditions as per | 266 |
| | Charter. | 267 |
| | (c) In case of more than one loading port, and if one or more of | 268 |
| | the ports are closed by ice, the Captain or Owners to be at liberty | 269 |
| | either to load the part cargo at the open port and fill up elsewhere | 270 |
| | for their own account as under section (b) or to declare the Charter | 271 |
| | null and void unless Charterers agree to load full cargo at the open | 272 |
| | port. | 273 |
| | (d) This Ice Clause not to apply in the Spring | 274 |
| | | 275 |
| | Port of Discharge | |
| | (a) Should ice (except in the Spring) prevent vessel from reaching | 276 |
| | port of discharge Receivers shall have the option of keeping vessel | 277 |
| | waiting until the re-opening of navigation and paying demurrage, or | 278 |
| | of ordering the vessel to a safe and immediately accessible port | 279 |
| | where she can safely discharge without risk of detention by ice. | 280 |
| | Such orders to be given within 48 hours after Captain or Owners | 281 |
| | have given notice to Charterers of the impossibility of reaching port | 282 |
| | of destination. | 283 |
| | (b) If during discharging the Captain for fear of vessel being frozen | 284 |
| | in deems it advisable to leave, he has liberty to do so with what | 285 |
| | cargo he has on board and to proceed to the nearest accessible | 286 |
| | port where she can safely discharge. | 287 |
| | (c) On delivery of the cargo at such port, all conditions of the Bill | 288 |
| | of Lading shall apply and vessel shall receive the same freight as | 289 |
| | if she had discharged at the original port of destination, except that if | 290 |
| | the distance of the substituted port exceeds 100 nautical miles, the | 291 |
| | freight on the cargo delivered at the substituted port to be increased | 292 |
| | in proportion. | 293 |
| | | 294 |

VOYWAR 2013
War Risks Clause for Voyage Chartering

(a) For the purpose of this Clause, the words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

War; act of war, civil war or hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy and/or violent robbery and/or capture/seizure (hereinafter "Piracy"); acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the government of any state or territory whether recognised or not, which, in the reasonable judgement of the Master and the Owners, may be dangerous or may become dangerous to the Vessel, cargo, crew or other persons on board the Vessel.

(b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose the Vessel, cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose the Vessel, cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and the port or ports nominated by the Charterers fall within the Vessel, cargo, crew, or other persons on board the Vessel may be exposed to War Risks, the Owners shall first require the Charterers to nominate any other safe port which falls within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(c) The Owners shall not be required to continue to load cargo for any voyage, or to sign bills of lading, waybills or other documents evidencing contracts of carriage for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, cargo, crew or other persons on board the Vessel may be exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, cargo, crew or other persons on board the Vessel may be exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(e) (i) The Owners may effect War Risks insurance in respect of the Vessel and any additional insurances that Owners reasonably require in connection with War Risks and the premiums therefor shall be for their account.

(ii) If, pursuant to the Charterers' orders, or in order to fulfil the Owners' obligation under this Charter Party, the Vessel proceeds to or through any area or areas exposed to War Risks, the Charterers shall reimburse to the Owners any additional premiums required by the Owners' Insurers. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterers shall further reimburse to the Owners for his actual additional premiums paid (on completion of discharge) until the Vessel leaves such area or areas. The Owners shall leave the area or areas as soon as possible after completion of discharge.

(iii) All payments arising under this Sub-clause (e) shall be settled within fifteen (15) days of receipt of Owners' supported invoices.

(f) The Vessel shall have liberty:

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the Vessel sails, or other government to whose laws the Owners are subject, or any government of any state or territory whether recognised or not, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the requirements of the Owners' insurers under the terms of the Vessel's insurance(s);

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any alternative port any cargo or part thereof which may expose the Vessel to being held liable as a contraband carrier;

(v) to call at any alternative port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment, detention or similar measures;

(vi) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(g) The Charterers shall indemnify the Owners for claims arising out of the Vessel proceeding in accordance with any of the provisions of Sub-clauses (b) to (f) which are made under any bills of lading, waybills or other documents evidencing contracts of carriage.

When acting in accordance with any of the provisions of Sub-clauses (b) to (f) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

RIDER CLAUSES TO THE CHARTER PARTY
M/V "AEOLOS"
CPD 23RD DEC 2013
-------------------------------------------------------------------------------

## CLAUSE 18:
a) The vessel to be classed highest Lloyds or equivalent, tight, staunch and in every respect fitted to perform this voyage. Owners to maintain the same for the whole currency of this Charter Party. Vessel to comply with ISM.

b) The vessel to have a full set of fitting hatch covers when loading bagged cargo. Weather deck hatches, manholes, etc. to be absolutely watertight.

## CLAUSE 19:
a) The vessel to have and maintain during the whole currency of this Charter Party the current valid cargo gear certificates on board. The vessel to give free use of cranes up to their full capacity and power to drive them. Owners' guarantee vessel has gear as per vessel's description.

b) Time lost in failure of light as on board, or insufficiency of power, gear or any other consequences due fault of the vessel beyond Charterers'/Receivers' control, shall not be counted and loading respectively discharging time or demurrage time and laytime to be deducted in proportion to number of holds of the vessel.

If vessels crane breakdown, lay time to stop counting pro-rata to the number of holds available until resume of loading/ discharging unless owners provide in their option shore crane/s in lieu thereof which case time to continue counting.

c) Shore competent cranemen to be paid by Charterers and shall work under the supervision of the Master.

d) Charterers/Receivers have the privilege of working all hatches simultaneously whenever required.
It is understood that vessel has 5 holds/hatches and 4 cranes and therefore vessel cannot work All hatches simultaneously with ships cranes.

## CLAUSE 20:
NOTICE AT LOADPORT
Owners to give ETA on fixing, thereafter 7/5/3/2/1 days notice. Furthermore, Owners to keep Charterers and their Agents closely informed about the vessel's position.

## CLAUSE 21:
Inspection
At loadport, if vessel fails hold survey, then laytime not to count prorata to the affected holds from time when vessel fails hold inspection until she passed same. The independent Surveyor to be appointed by Charterers. The time to be for Charterers' account, and the cost of the Surveyor to be for Charterers' account.

## CLAUSE 22:
Fumigation
a) If living parasites are found in the holds by the Surveyors before starting loading, Charterers are to fumigate the vessel. The cost of such fumigation, reasonably priced (price to be agreed by Owners) to be for Owners' account.

b) If no living parasites are found, Charterers/Shippers/Receivers have the option to fumigate the vessel prior loading and/or the cargo on board after loading or at discharge port prior starting discharge at Charterers' time. Charterers liberty to fumigate the cargo as required by shippers/ receivers  at their time & expense such fumigation to be always done at charterers' time/ risk & expense and always in strict accordance with imo & other similar regulations as well as manufacturers instructions & recommendations (by qualified operators) and all health requirements for the vessel & crew.
If additional fumigation is ordered by Charterers during loading or on completion of loading, the cost of this fumigation and any expenses derived therefrom to be for Charterers' account and time so used to count as loading time as per Charter Party.

c) Delete

d) Charterers liberty to use aluminium phosphide provided the fumigation will be carried always in accordance with IMO regulations.

e) At discharge port, if any additional fumigation is ordered by the Receivers, same and any expenses derived to be for Charterers' account and time to count.

f) Delete

Cargo fumigation in transit may be carried out only with the consent of the master and with the agreement of the "Port State Administration" and/ or any additional flag state requirements. Crew shore accomodations/ victualling if required to be for charterers account.

Charts allowed up to a maximum of 6 hours free time for fumigation which not to count as laytime provided such time or prorata if any less actually lost due to fumigation.

Fumigant used to be approved type and safe for the vessel and crew and always in accordance with IMO & WHO and other similar regulations as well as manufacturers instructions and recommendations and Charterers to provide Master with complete safety instructions applicable for the type of fumigant used and provide to the master written instructions about ventilation procedures.

**CLAUSE 23: Vessel's obligation:**
Before accepting Owners'/Master's written or cabled Notice of Readiness, the vessel's holds to be in every respect suitable for loading bagged rice, fumigated if necessary as per Clause 22 paragraph (a) and all cargo compartments passed by an independent Surveyor to Shippers' satisfaction, provided Surveyor boards vessel immediately upon her arrival. If survey does not take place immediately after vessel's arrival, time to count from time vessel tenders Notice of Readiness, whether in port or not, whether in berth or not, whether in free pratique or not, whether customs cleared or not, but if vessel found to be not in a load-ready condition, then time to cease to count from time of failure until vessel's holds are in a load-ready condition. Holds to be clean, dry and free from objectionable smell and parasites.

**CLAUSE 24:**

Notice of Readiness at loading/discharging port
WWWW clause, bimco holiday calendar to apply – bimco holidays not to count as lay time.
Notification of vessel's readiness to load/discharge at port of loading/discharging shall be delivered at Shippers'/Charterers' Agents' office during ordinary office hours in accordance with Clause 23. In the event of congestion Master has right to tender his Notice of Readiness tendered by radios/cable/email, whether in berth or not, whether in port or not, whether customs cleared or not, whether in free pratique or not, time to count both ends as follows:
Laytime prorata for loading and discharging shall commence next working period after Notice of Readiness properly tendered, Notice of Readiness to be tendered in normal business hours of 0800 hrs to 1700 hrs from monday to friday and 0800 hrs to 1300 hrs on saturday. Notice of Readiness at loading port to be given to the Shippers named in box 17 or if not named to the Charterers or their agents named in box 18. Notice of Readiness at the discharging port to be given to the Receivers or if not known to the Charterers or their agents named in box 19.
If the loading/discharging berth is not available on the vessel's arrival at or off the port of loading/discharging, the vessel shall be entitled to give Notice of Readiness within ordinary office hours on arrival there, whether on port or not, whether in berth or not, whether in free Pratique or not, whether customs cleared or not. Laytime prorata or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading /discharging berth shall not count as laytime prorata.

If, after inspection, the vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.

In case of congestion Master has the right to tender his Notice of Readiness, whether in berth or not, whether in port or not, whether customs cleared or not, whether in free pratique or not, by telex/cable/fax both ends and time to count as per above both ends.

Laytime shall cease to count after completion of loading respectively discharging or completion of documentation/ surveys/ fumigation whichever is later.

Vessels' holds on arrival at load port to be clean swept/ washed down by fresh water and dried up so as to receive charterers cargo, ready in all respects to load charterers' cargo, free of salt, loose rust scale and previous cargo residues to the satisfaction of local independent surveyors.

Charterers will appoint their own licensed surveyor to attend the above survey. Any time actually lost from the time of rejection until accepted, should the vessel fail such survey not to count as laytime or time on demurrage.

**CLAUSE 25:**
**Time counting at loading port**
Loadrate: 2,000 mts per weather working day, from saturday noon or 17:00 day on a day preceding local holiday untill monday 0800 am or 0800 am next working day not to count even if used.

**CLAUSE 26:**
Charterers/Shippers to provide and lay styrofoam mats, dunnage and kraft paper as required to ensure cargo safety. Slings to be supplied by Charterers/Shippers.
Cost of shore tally both ends to be for Charterers/Shippers respectively Receivers account.
Crew tally is always to be for Owners' account.

**CLAUSE 27:**
**Inaccessible space:**
No cargo to be loaded in bunker space, far ends, alleyways or any other places not easily accessible.

**CLAUSE 28:**
**Responsibility of bagged cargo**
a) If required by Shippers'/Receivers' Agents, the Master to give daily Mate's receipt.
   Master to state number of bags taken on board provided that cargo has been loaded on board and it is in sound condition.

b) Charterers to be allowed to load small quantity of empty bags (upto a maximum of 2 metric tons which not to count as freight ). time for loading/ discharging of empty bags to count as laytime or time on demurrage as the case may be bends but owners not to be responsible for the quality of bags loaded and no claims of any nature to be made against owners resulting fm the carriage of such bags. master to issue clean bills of lading for empty bags also & charterers hereby accept sole responsibility for claims will arise at discharge port realated to this matter and undertake to hold owners harmless from any liability.

c) Master to issue clean bills of lading. Master has the right to reject any damaged/ unsound cargo while loading and charterers to replace same immediately at their time & expense. Owners to  instruct vessel for issue of mate receipts on daily basis.

**CLAUSE 29 - Freight payment**
Freight USD 60.00 per metric ton - polypropylene matts/ dunnage material/etc. to be for charterers/shippers account. Laying/ securing, lashing separation labour and labour costs for charterers/shippers account but owners to contribute maximum usd 5,000 towards to matts/dunnage...etc

100% freight together with demurrage at load or less undisputed despatch if any  (as the case may be) and less commissions payable within 2 banking days after completion of loading and signing and releasing bills of lading marked "freight payable as per charter party dated 23rd dec'2013. In case 'freight prepaid' bills of lading are required, same to be released upon receipt by owns bankers of 100% freight.demurrage/ dispatch at discharge port if any to be settled latest within 10 days after completion of discharge and owners presentation of final accounts together with supporting documents (faxed copies deemed acceptable) should

charterers require bills of lading release proportionally freight to be paid accordingly. Freight deemed earned whilst being loaded on board, discountless and non-returnable cargo and/ or vessel lost or not lost.

Freight to be paid to:

Bank details:
  ROYAL BANK OF SCOTLAND
  PIRAEUS BRANCH
  SWIFT CODE: RBOSGRAA
  IBAN GR17 0640 0010 0055 5542 4583 100
  FOR THE ATTENTION OF MRS. K. DIMITRIOU

Correspondent Bank:
JP MORGAN CHASE BANK N.Y.
SWIFT CODE: CHASUS 33

For the credit of:
ONIRATO NAVIGATION LTD.
A/C No. 5555 424583 100

**CLAUSE 30:**
**Opening and closing of hatches**
First opening and last closing of hatches and rigging of gear to be performed by vessels Crew at all ports of call, at Owners risk and expense and in Owners time provided, local authorities permit it. If more opening/closing are required same to be performed with assistance of vessels Crew at Charterers' account and time, provided local regulations permit.

**CLAUSE 31:**
**Overtime**
a) Charterers/nominees to have liberty to work during night and/or the excepted period during night
   and time to count.

b) Overtime to be for account of the party ordering same, but overtime for Officers, Crew to be for
   Owners' account.

c) If overtime is ordered by port authority or the party controlling the loading and/or discharge
   terminal facility, all overtime expenses except Crew's to be for Charterers' account.

**CLAUSE 32:**
**Shifting:**
At load port shifting from waiting anchorage/waiting area to first berth or first anchorage as the case may be to be for owners account, all subsequent shifting/s if any to be for charterers account account.

At discharge port shifting from waiting anchorage to first berth to be for owners account. Shifting from 1st berth to second berth if any always to be for charterers account (excluding fuel consumed) but time not to count as discharge port is free of disbursement account to owner then normal all such expenses to be for charterers account.

**CLAUSE 33:**
**Seaworthy trim:**
Master to ensure that the vessel is left in seaworthy trim for sailing between loading berths and discharging berths.

**CLAUSE 34:**
**Owners' responsibility:**
The Captain shall use diligence in caring for ventilation of the cargo as per charterers written instructions and provided that weather permits. Captain or Master to afford all necessary facilities to Charterers'/nominees or their Agents to survey the vessel at all times and allow free access to the holds during the loading and discharging for the purpose of inspecting the dunnage.

Mats/dunnage/kraft paper to be supplied up to Master's satisfaction. Vessel will in all cases be held responsible for damage to cargo caused by water through ventilators or due to leakage of water or oil from pipes or tanks on board occasioned by lack of due diligence in making the vessel seaworthy for the currency of this Charter Party. Loading and stowage to be at Master's discretion and satisfaction.

All hatch entrances to be sealed after completion of loading & unsealed at the discharge port. The sealing and unsealing to be witnessed by owner's/ shipper's/ receiver's representatives by an independent surveyor appointed by owners. intact seals upon commencement of unloading will amount to sufficient evidence absolving master/ owners/ vessel of any liability whatsoever regarding claims of cargo shortage at all discharging port/s. Charterers hereby accept sole responsibility for shortage/pilferage claims during the course of this charter party and undertake to hold owners harmless from any liability for all cargo claims except claims arising from vessel's un-seaworthiness (which will be dealt with by owners p and i club) and to deal with those claims directly, either by way of providing security or conducting/ concluding settlement negotiations at their time and expense.

It is hereby agreed that upon completion of loading master or owners shall have the hatches sealed by an independent surveyor appointed by their p&i and will invite shippers/ charterers/ receivers if available to witness same. Intact seals upon commencement of unloading will amount to sufficient evidence absolving master/ owners/ vessel of any liability whatsoever regarding claims of cargo shortage at all discharging ports. Charterers hereby accept sole responsibility for shortage/ pilferage claims during the course of this charter party and undertake to hold owners harmless from any liability for all other cargo claims except claims arising from vessel's seaworthiness and to deal with those claims directly, either by way of providing security for their account or conducting/ concluding settlement/ negotiations to prevent arrest/ detention of the vessel or to release the vessel from arrest or detention. If the vessel is arrested as a result of cargo claims, any time lost to count as laytime or time on demurrage.

Claims for which vessel is responsible shall be settled by owners p&i club .

All cargo claims arising from vessel's un-seaworthiness, will be dealt by owners p&i club and any time actually lost as a result of such claim not to count as laytime or time on demurrage.

Owners of the vessel not to be responsible for delivery of the number of the bags shown in the bills of lading subject hatch seals are intact upon commencement of discharging. The vessel is electrically ventilated.

## CLAUSE 35:
**Stevedores**
a) The cargo to be loaded, stowed and discharged by Stevedores appointed by
   Charterers/Receivers, free of risk and expense to the vessel. Stevedores shall work under the
   supervision of the Master.

b) Any stevedore damages to the vessel to be settled directly between Owners and
   Charterers/Stevedores. In case of need Charterers to assist Owners as far as possible to reach
   settlement with Stevedores, but Charterers to remain ultimately responsible.

## CLAUSE 36:
**Demurrage/despatch:**
Demurrage at the rate of US-$ 12.000,00 per day or pro-rata  to be applied at loading and discharging ports. Despatch payable at half rate of demurrage per day or pro-rata on working time saved at both ends, to be settled with Charterers' for both ends.
Any demurrage/despatch to be settled within 10 days after completion of discharge upon mutual concurrence on laytime calculations.

Owners/Agents will try, without guarantee, to provide Time Sheet, Notice of Readiness and Statement of Facts, signed by Charterers/Owners/Receivers or their Agents.

## CLAUSE 37:
- d e l e t e d -

## CLAUSE 38:

**Black list:**
Owners guarantee the vessel is not blacklisted by any Arab country or Syrian authorities and is not blacklisted by local authorities/league and/or unions for whatever reasons and is allowed to load/discharge at the ports mentioned or fixed in this Charter Party.

**CLAUSE 39:**
Disputes
GA/ arbitration to be in London and English law and English jurisdiction to apply. Bimco standard law and arbitration clause 1998 to apply (with small claims arbitration procedure to apply for claims upto us$ 40,000.00 excl. legal costs.
Bills of lading to be governed by english law and english jurisdiction to apply.

**CLAUSE 40:**
Agency
Charterers agents bends but always in line with tariff of the port

At Kakinada:

Ms.Dhana Kale [ H/P:+91-94401 76463 ]
As Agents
Act Forwarders Steamer Agency
31-1-16 Rangayya Naidu Street
Kakinada-533001, A.P., INDIA
TEL :+91 884 2371231,2353603
FAX :+91 884 2364415
EMAIL : act@aktf.com, actforwarders@gmail.com


At Apapa:
- *to be nominated -*

Port disbursements at loadport(s) shall be for Owner's account.
At discharge port(s) all port disbursements including agency fees ,shifting expenses, shore tallying and any wharfage calculated on cargo and/or vessel will be for Charterer's account.

**CLAUSE 41:**
Notice at discharging port
Owners or the Master to cable 7/5/3/2 days and 24 hours notice to Receivers and Agents at port(s) of discharge before arrival at discharge port(s) in order to arrange for entry formalities at port(s) of destination. Notice to be given to: to be advised.

**CLAUSE 42:**
Extra insurance on cargo, due to vessel's age/ class/ ownership to be for charterers' account.

Present Additional War Wisk Insurance for trading Nigeria to be owners account, any increase after the day of fixing to be for charterers account.

**CLAUSE 43:**
Vessel's description:
MV AEOLOS
   BOX TYPE/ LOGS FITTED SD BC
   -DWAT      : 32,256 MT SS ON 10.568M - TPC:41.09/TPI:104.37
                33.925 MT W ON 10.348M - TPC:41.01/TPI:104.17
   -BUILT      : 26-02-01 / SAIKI HEAVY INDUSTRIES CO LTD  JAPAN
   -EX NAME  : EDUARD OLDENDORFF
   -FLAG       : MARSHALL ISLANDS
   -REGISTRY   : MAJURO
   -REGISTRY NUMBER : 3275
   -HULL NUMBER  : 1103
   -CLASS      : CLASSNK NS B.C.M. (BULK CARRIER MODIFIED) M.N.S.

-IMO NUMBER    : 9228382
-GRT        : 19,882.00 / NRT: 10,476.00
-SUEZ  GRT    : 20,344.04 / NRT: 17,778.16
-PANAMA GRT    : 67,050.95 / NRT: 25,043.00
-LOA      :   171.80 MTRS
-LPP      :   163.66 MTRS
-BEAM      :   27.00 MTRS
-DEPTH      :   14.80 MTRS
-LIGHTSHIP    :   7.394 MT
-CO2        : CARGO HOLDS ARE CO2 FITTED.
-VENTILATION    : CARGO HOLDS ELECTRICALLY VENTILATED
-AUSTRALIAN FTD  : FITTED WITH AUSTRALIAN TYPE HOLDS LADDERS.
-OWNERS P+I CLUB : NORTH OF ENGLAND

HOLDS      : 5 BOX TYPE CARGO HOLDS
HATCHES      : 5 FOLDING TYPE FLAT TOPPED FLUSH DOUBLE
          SKIN HYDRAULICALLY OPERATED WITH STEEL COVERS.
CRANES      : 4 X 30 MT - 24M(R)

HOLDS CAPACITY:

| | GRAIN M3 | BALE M3 | GRAIN C/FEET | BALE C/FEET |
|---|---|---|---|---|
| 1. | 5,061.18 | 4,963.09 | 178,734.00 | 175,270.00 |
| 2. | 8,966.70 | 8,904.56 | 316,656.00 | 314,462.00 |
| 3. | 8,965.19 | 8,889.16 | 316,603.00 | 313,918.00 |
| 4. | 8,965.19 | 8,903.51 | 316,603.00 | 314,425.00 |
| 5. | 8,364.83 | 8,179.04 | 295,401.00 | 288,840.00 |
| | 40,323.09 | 39,839.36 | 1,423,997.00 | 1,406,915.00 |

HATCH SIZES:
 1.13.43 X 17.00
 2.20.54 X 22.86
 3.20.54 X 22.86
 4.20.54 X 22.86
 5.19.75 X 22.86

HOLDS DIMENSIONS (COAMING) - METERS:
 1.L 22.12 X BREADTH  6.80 - 17.00)
 2.L 26.86 X  ,,    22.86
 3.L 26.86 X  ,,    22.86
 4.L 26.86 X  ,,    22.86
 5.L 26.86 X    22.86 - 8.20

FLAT FLOOR MEASUREMENT OF CARGO HOLDS AT TANK TOP (METERS)
 1.LENGTH 22.12 X BREADTH (6.80/17.00)  X HEIGHT 13.13
 2.LENGTH 26.86 X BREADTH  22.86    X HEIGHT 13.13
 3.LENGTH 26.86 X BREADTH  22.86    X HEIGHT 13.13
 4.LENGTH 26.86 X BREADTH  22.86    X HEIGHT 13.13
 5.LENGTH 26.86 X BREADTH (22.86/8.20)  X HEIGHT 13.13

WLTHC:
LIGHT BALLAST: 14.34 M
HEAVY BALLAST: 11.93 M
FULLY LADEN  : 6.98 M

STRENGTHS:
 TT    : N1-5 : 20.00 (METRIC TONS PER SQM)
 H. COVERS: N1-5 : 3.50    ,,
    DECK:    4.00    ,,

-DISTANCES:

```
-SHIP'S RAIL TO NEAR AND FAR EDGE OF HATCH COVERS/COAMING
 NEAR AND FAR (METRES):  NO1 CARGO HOLD  FRWD 1.30 MTRS   AFT 4.20 MTRS
-SHIP'S RAIL TO NEAR AND FAR EDGE OF HATCH COVERS/COAMING
 NEAR AND FAR (METRES) : NO2,3,4,5 CARGO HOLD  2.070 MTRS  /  1.45 MTRS
-FROM BOW TO FORE OF 1ST HOLD OPENING (METRES) : 17.20 MTRS
-FROM STERN TO AFT OF LAST HOLD OPENING (METRES): 31.10 MTRS


LOGS SUITABLE       : YES - NO LOGS PERMITTED
PERMANENT STANCHIONS: YES
              HEIGHT OF LOG STANCHIONS ABOVE MAIN DECK AT
              HOLD N1  :7 MTRS
              HOLDS N2-5 :8 MTRS
CHAINS/ SHACKLES   : YES (SOME ON BOARD)
TIMBER FITTINGS    : YES
  -OWNERS       : ONIRATO NAVIGATION LTD.
            THE TRUST COMPANY OF THE MARSHALL ISLANDS, INC.
            TRUST COMPANY COMPLEX
            AJELTAKE ROAD AJELTAKE ISLAND
            PO BOX 1405
            MAJURO, MH 96960


 -MANAGERS  :  ALEXANDRIA SHIPPING (HELLAS) S.A.
            7 OMONIA SQUARE
            ATHENS 104 31 - GREECE
            E-MAIL: OPERATIONS@ALEXSHIP.GR
            P.I.C.: MR NIKOLAS C. NIKOLAOU (OPS MANAGER) ALL DETAILS GIVEN IN GOOD
FAITH/ ABOUT
```

Owners to provide valid certificates.

Vessels or owner's or their servants to send e.mail or fax advising vessel's position, distance covered and estimated time of arrival at discharge port every 24 hours

Vessel owner's or their servants to give written notice as per charter party.

Vessel will provide power for operating bag stitching machines/other portable machines for rebagging provided as available on board, free of charge but all cabling/ plugs/ etc for charterers account

**CLAUSE 44:**
1,500 mts per weather working day, from saturday noon or 17:00 hours on a day preceding local holiday untill monday 0800 am or 0800 am next working day not to count even if used.

**CLAUSE 45:**
Mats/dunnage both ends to be for Charterers' account.

Owns will appoint tally men from their p+i club and will pay for same, any/ all other tally men to be employed at charterers expense.

**CLAUSE 46:**
Cargo quantity at discharge port(s) will be determined by joint tri-party initial and final draft survey both at port of loading(s) / discharge(s) to be carried out by independent surveyors appointed by Charterers, Receivers & Owners. Owners liberty to be represented by a surveyor and/ or master.

**CLAUSE 47:**
**Supplementary Clause**
Both-to-Blame Collision Clause, BIMCO Paramount Clause General, New Jason Clause and P. & I. Bunker Clause, BIMCO ISM/ISPS Clause, BIMCO Piracy Clause for Voyage Charter Parties to apply to .this Charter Party.

**CLAUSE 48:**

**Watchmen**
Cargo Supervisor and watchmen if required by Charterers to be for Charterers' account.
Cargo Supervisor if required by port authorities to be for Charterers' account. Watchmen if required by port authorities to be for Charterers' account.

**CLAUSE 49:**
P. & C. Clause:
Fixture to be kept private and confidential.

**CLAUSE 50:**
Taxes/ dues on vessel/ freight at loadport to be for owners account.

Taxes/ dues on cargo on calculated on same at loadport to be for chrtrs account.

Taxes/dues on vsl/ cargo/ freight at discharge to be chrtrs account. (view free disbursement account)

**CLAUSE 51:**
Lighterage
Lighterage/lightening at both ends, if any, to be for Charterers' account/time/risk/expense.

The above operation will be always effected to the Master's full satisfaction regarding general safety and is to be carried out in accordance with sound and proper marine practice.
Charterers are to supply and pay for all fenders or other protective material necessary to the Master's satisfaction who is however accepting the usual lightening practice prevailing at discharge port anchorage.

If at any time the Master considers, at his sole discretion, that the safety of his vessel is endangered, he has the liberty to order the barges/lighterers away immediately and remove his vessel at a safe place, all costs and expenses incurred being for Charterers' account and laytime to fully count during any time lost as a consequence. The Charterers shall further indemnify the Ownres for any costs, damages and liabilities resulting from such operation.

**CLAUSE 52:**
Bills of Lading
Bills of Lading to be issued in strict accordance with Mate's Receipts and Tally Clerks Receipts.

Master to issue clean bills of lading. Master has the right to reject any damaged/ unsound cargo while loading and charterers to replace same immediately at their time & expense. Owners to instruct vessel for issue of mate receipts on daily basis.

Bills of Lading quantity as per the number of bags loaded to be determined by joint tally between owner's & shippers/ receiver's each party to appoint and pay for their own surveyor.

The Charterers shall keep Owners harmless against all consequences and/or liabilities, losses or damages of whatsoever nature which may arise from any inconsistency between this Charter Party and any Bills of Lading signed by the Master at Charterers' request.

Release of cargo – should original "bills of lading" not be available at discharging ports in time for presentation to the vessel and provided no freight is outstanding, owners to release the entire cargo without presentation of the original "bills of ladings" after receiving written authority from charterers. The charterers having also issued and signed (by charterers authorized signature and name / designation of signatory to be shown with company's official stamp) a letter of indemnity without bank guarantee in the form required by owners p&i club. Fax copy of such original signed letter of indemnity (together with copy of all bills of lading) has to reach owners office during working day prior to the vessels arrival and original to be sent by courier directly to owners. Owners agree to instruct the master to follow charterer's direct instructions in connection to releasing and delivering the cargo to the legal and physical receivers who are to be directly nominated by the charterers or their agents.

CONGEN 94 Bills of Lading to be used always in strict accordance with mate receipt.


**CLAUSE 53:**

deleted

**CLAUSE 54:**
**No part cargo**
Owners are not permitted to load any other cargo on board vessel and upon completion of loading, the vessel is to sail directly via Cape Good Hope to the discharge port performing speed to be at owners option excluding bunkering en route, life saving or any emergency.

**CLAUSE 55:**
The vessel is suitable for loading bagged rice, fully geared and classed highest Lloyds or equivalent with a valid certificate.

**CLAUSE 56:**
Laytime both ends to be non-reversible.

**CLAUSE 57:**
Owners guarantee vessel's hatchcovers to be watertight all throughout this Charter period. Hatches to be carefully tended by Crew to prevent leakage. If any hatchcovers are found to be defective then same to be rectified in Owners' time/expense to Charterers' satisfaction. Charterers also have the right to carry out hose test on all hatches before commencement of loading.

**CLAUSE 58:**
deleted

**CLAUSE 59:**
deleted

**CLAUSE 60:**
In case the cargo presented for shipment includes damaged bags necessitating segregation and rejection, all and any additional Cargo Surveyors' fees and also segregation, rejection and additional port costs to be for the account of Shippers/Charterers.

**BIMCO STANDARD ISM CLAUSE FOR VOYAGE AND TIME CHARTERPARTIES**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.
Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account."

**ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005**

(A)
(i)The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS CODE) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii)Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii)Loss, damages, expenses or delay (excluding consequential loss, damages, expense or delay) caused by failure on the party of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(B)

(i)The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(ii)Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(C)
Provided the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:

(i)Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.

(ii)Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' Managers.

(D)
Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' Managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(E)
If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**VOYWAR 2013**
War Risks Clause for Voyage Chartering

(a) For the purpose of this Clause, the words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

War, act of war, civil war or hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy and/or violent robbery and/or capture/seizure (hereinafter "Piracy"); acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the government of any state or territory whether recognised or not, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or may become dangerous to the Vessel, cargo, crew or other persons on board the Vessel.

(b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose the Vessel, cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose the Vessel, cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, cargo, crew, or other persons on board the Vessel may be exposed to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the

Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(c) The Owners shall not be required to continue to load cargo for any voyage, or to sign bills of lading, waybills or other documents evidencing contracts of carriage for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, cargo, crew or other persons on board the Vessel may be exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, cargo, crew or other persons on board the Vessel may be exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.
(e) (i) The Owners may effect War Risks insurance in respect of the Vessel and any additional insurances that Owners reasonably require in connection with War Risks and the premiums therefor shall be for their account.

(ii) If, pursuant to the Charterers' orders, or in order to fulfil the Owners' obligation under this Charter Party, the Vessel proceeds to or through any area or areas exposed to War Risks, the Charterers shall reimburse to the Owners any additional premiums required by the Owners' insurers. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterers shall further reimburse the Owners for the actual additional premiums paid from completion of discharge until the Vessel leaves such area or areas. The Owners shall leave the area or areas as soon as possible after completion of discharge.

(iii) All payments arising under this Sub-clause (e) shall be settled within fifteen (15) days of receipt of Owners' supported invoices.

(f) The Vessel shall have liberty:

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the Vessel sails, or other government to whose laws the Owners are subject, or any other government of any state or territory whether recognised or not, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the requirements of the Owners' insurers under the terms of the Vessel's insurance(s);

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any alternative port any cargo or part thereof which may expose the Vessel to being held liable as a contraband carrier;

(v) to call at any alternative port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment, detention or similar measures;

(vi) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(g) The Charterers shall indemnify the Owners for claims arising out of the Vessel proceeding in accordance with any of the provisions of Sub-clauses (b) to (f) which are made under any bills of lading, waybills or other documents evidencing contracts of carriage.

When acting in accordance with any of the provisions of Sub-clauses (b) to (f) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.


**Both-to-Blame Collision Clause:**
If the liability for any collision in which the vessel is involved while performing this Bill of Lading falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:
If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnity the Carrier against all loss or liability to the other or non-carrying ship or the owners in so far as such loss or liability represents loos of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

**New Jason Clause:**
In event of accident, danger, damages or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, Shippers, Consignees, or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owner or operated by the Carrier, salvage shall be paid for as fully as if such salving ship or ships belonged to strangers. Such deposit as the Carrier or his Agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owner of the goods to the carrier before delivery.

**Protection & Indemnity Bunkering Clause:**
The vessel in addition to all other liberties shall have liberty as part of the contract voyage and at any stage thereof to proceed to any port or ports whatsoever whether such ports are on or off the direct and/or customary route or routes to the ports of loading or discharge named in the Charter and there take oil bunkers in any quantity in the discretion of owner even to the full capacity of fuel tanks, deep tanks and any other compartment in which oil can be carried whether such amount is or is not required for the chartered voyage.

**BIMCO Piracy Clause for single voyage Charter Parties:**

(a) If, after entering into this Charter Party, in the reasonable judgement of the Master and/or the Owners, any port, place, area or zone, or any waterway or canal (hereinafter "Area") on any part of the route which is normally and customarily used on a voyage of the nature contracted for becomes dangerous, or the level of danger increases, to the Vessel, her cargo, crew or other persons on board the Vessel due to any actual,

threatened or reported acts of piracy and/or violent robbery and/or capture/seizure (hereinafter "Piracy"), the Owners shall be entitled to take a reasonable alternative route to the discharging port and, if they so decide, immediately give notice to the Charterers that such route will be taken. Should the Vessel be within any such place as aforesaid which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(b) In any event, if the Vessel proceeds to or through an Area exposed to the risk of Piracy the Owners shall have the liberty:

(i) to take reasonable preventative measures to protect the Vessel, her crew and cargo including but not limited to re-routeing within the Area, proceeding in convoy, using escorts, avoiding day or night navigation, adjusting speed or course, or engaging security personnel or equipment on or about the Vessel;

(ii) to comply with the orders, directions or recommendations of any underwriters who have the authority to give the same under the terms of the insurance;

(iii) to comply with all orders, directions, recommendations or advice given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group, including military authorities, whatsoever acting with the power to compel compliance with their orders or directions; and

(iv) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement.

(c) This Clause shall be incorporated into any bill of lading issued pursuant to this Charter Party. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the Master signing bills of lading as presented to the extent that the terms of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Clause.

d) If in compliance with this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party. In the event of a conflict between the provisions of this Clause and any implied or express provision of the Charter Party, this Clause shall prevail to the extent of such conflict, but no further.

**BIMCO Paramount Clause General**

The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.

When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.

The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.

The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or while the cargo is in the charge of another carrier, or with respect to deck cargo and live animals.

# EXHIBIT B

| Alexandria Shipping (HELLAS) S.A. | Safety Management System | Revision | 05 |
|---|---|---|---|
| | Safety Management Manual (S.M.M.) Policy & Procedures | Control Date | 09-07-13 |
| | | Prepared by | K.N.G. |
| | "Shipboard Operations (Cargo Ballast Handling/Distribution)" Notice of Readiness Form [CVD-761] | Approved By | M.D.T. |
| | | Page | 01 of 01 |
| | | Chapter | 7.6 |

## Notice of Readiness

| Vessel's Name | M.V. AEOLOS | Port of | Apapa  Lagos, Nigeria |
|---|---|---|---|
| To Messrs  (Agent) | M/S Ocean Glory Commodities Limited | Date | 30th  January 2014 |
| | | Charterers | Sri Lalitha Enterprises Industries Private Limited |
| | | C/P Date | 23-12-2013 |

Dear Sirs,

Please be advised that Mv "Aeolos" has arrived at your port on 30-01-2014 at 1330 local time or 1230 utc and she is in all respects ready to commence discharging her cargo of BAGGED RICE   of 29,250.00 mts Net Weight (585,000 Bags) as per all terms and conditions of relevant Charter Party.

Please notify all parties concerned accordingly.

| Master's Signature Ship's Stamp | Capt. Edgar R. Alquiza |
|---|---|

**Received and accepted as per terms and conditions of governing Charter party**

Date : 30/01/14
Time : 1330 HRS

| Signed and stamped by T/C  Agents on behalf of Charterers | UGOJE  JUDE |
|---|---|

EXHIBIT C

ALEXANDRIA SHIPPING (HELLAS) S.A.
7, OMONIA SQUARE, 104-31 ATHENS
Phone : +30 210 5238000, Fax : +30 210 5236900

## LAYTIME STATEMENT

| MV : AEOLOS | A/C : | | SRI LALITHA | CP : 23.12.2013 | | PORT : | Apapa, Lagos |
|---|---|---|---|---|---|---|---|
| CARGO: | Bagged Rice | Mts | 29,331.900 | | | | |

| COMMENCEMENT OF LAYTIME : | | |
|---|---|---|
| NOR TO BE TENDERED WWWW MON/FRI FM 08 00 TO 17 00 | | |
| SAT FM 08 00 TO 13 00 | | |
| Laytime to commence next working period after NOR tendered | | |
| Working periods as per Bimco Holiday  07 30-15 30 / 15 30-22 30 | | |
| LAYTIME TERMS : | | |
| PWWD, FM SAT NOON OR 17 00 ON A DAY PRECEDING HOLIDAY | | |
| UNTIL MONDAY 08 00 OR 08 00 NEXT WORKING DAY NTC EIU | | |
| Shifting fm waiting anchorage to first berth/anch NTC all other shiftings for C/A | | |
| Time for discharging empty bags to count | | |
| Laytime shall cease after disch completion or completion of | | |
| documentation/surveys/fumigation, whichever is later | | |
| Bimco Holiday Calendar to apply and NTC as laytime | | |

| | | |
|---|---|---|
| ARRIVED AT ROADS | 30-Jan-14 | 13:30 |
| NOTICE TENDERED | 30-Jan-14 | 13:30 |
| NOTICE VALID | 30-Jan-14 | 13:30 |
| PILOT ON BOARD | 00-Jan-00 | 00:00 |
| BERTHED ALONGSIDE | 00-Jan-00 | 00:00 |
| STARTED  discharging operations | 00-Jan-00 | 00:00 |
| FINISHED  discharging operations | 00-Jan-00 | 00:00 |
| DOCUMENTATION completed | 00-Jan-00 | 00:00 |
| SAILED | 00-Jan-00 | 00:00 |
| LAYTIME COMMENCES | 30-Jan-14 | 15:30 |

**LAYTIME ALLOWED :**                      19:13:18

| DATE | DAY | FROM | - | TO | % | REMARKS | D:HH:MM | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 30-Jan-14 | Thu | 15:30 | - | 24:00 | 100% | Vessel drifting 215 miles off Apapa | 0:08:30 | 00:08:30 |
| 31-Jan-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 01:08:30 |
| 01-Feb-14 | Sat | 00:00 | - | 12:00 | 100% | Ditto | 0:12:00 | 01:20:30 |
| 01-Feb-14 | Sat | 12:00 | - | 24:00 | 0% | Time Not to Count | 0:00:00 | 01:20:30 |
| 02-Feb-14 | Sun | 00:00 | - | 24:00 | 0% | Ditto | 0:00:00 | 01:20:30 |
| 03-Feb-14 | Mon | 00:00 | - | 08:00 | 0% | Ditto | 0:00:00 | 01:20:30 |
| 03-Feb-14 | Mon | 08:00 | - | 24:00 | 100% | Vessel drifting 215 miles off Apapa | 0:16:00 | 02:12:30 |
| 04-Feb-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 03:12:30 |
| 05-Feb-14 | Wed | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 04:12:30 |
| 06-Feb-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 05:12:30 |
| 07-Feb-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 06:12:30 |
| 08-Feb-14 | Sat | 00:00 | - | 12:00 | 100% | Ditto | 0:12:00 | 07:00:30 |
| 08-Feb-14 | Sat | 12:00 | - | 24:00 | 0% | Time Not to Count | 0:00:00 | 07:00:30 |
| 09-Feb-14 | Sun | 00:00 | - | 24:00 | 0% | Ditto | 0:00:00 | 07:00:30 |
| 10-Feb-14 | Mon | 00:00 | - | 08:00 | 0% | Ditto | 0:00:00 | 07:00:30 |
| 10-Feb-14 | Mon | 08:00 | - | 24:00 | 100% | Vessel drifting 215 miles off Apapa | 0:16:00 | 07:16:30 |
| 11-Feb-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 08:16:30 |
| 12-Feb-14 | Wed | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 09:16:30 |
| 13-Feb-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 10:16:30 |
| 14-Feb-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 11:16:30 |
| 15-Feb-14 | Sat | 00:00 | - | 12:00 | 100% | Ditto | 0:12:00 | 12:04:30 |
| 15-Feb-14 | Sat | 12:00 | - | 24:00 | 0% | Time Not to Count | 0:00:00 | 12:04:30 |
| 16-Feb-14 | Sun | 00:00 | - | 24:00 | 0% | Ditto | 0:00:00 | 12:04:30 |
| 17-Feb-14 | Mon | 00:00 | - | 08:00 | 0% | Ditto | 0:00:00 | 12:04:30 |
| 17-Feb-14 | Mon | 08:00 | - | 24:00 | 100% | Vessel drifting 215 miles off Apapa | 0:16:00 | 12:20:30 |
| 18-Feb-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 13:20:30 |
| 19-Feb-14 | Wed | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 14:20:30 |
| 20-Feb-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 15:20:30 |
| 21-Feb-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 16:20:30 |
| 22-Feb-14 | Sat | 00:00 | - | 12:00 | 100% | Ditto | 0:12:00 | 17:08:30 |
| 22-Feb-14 | Sat | 12:00 | - | 24:00 | 0% | Time Not to Count | 0:00:00 | 17:08:30 |
| 23-Feb-14 | Sun | 00:00 | - | 24:00 | 0% | Ditto | 0:00:00 | 17:08:30 |
| 24-Feb-14 | Mon | 00:00 | - | 08:00 | 0% | Ditto | 0:00:00 | 17:08:30 |
| 24-Feb-14 | Mon | 08:00 | - | 24:00 | 100% | Vessel drifting 215 miles off Apapa | 0:16:00 | 18:00:30 |
| 25-Feb-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 19:00:30 |
| 26-Feb-14 | Wed | 00:00 | - | 12:48 | 100% | Vessel On demurrage | 0:12:48 | 19:13:18 |
| 26-Feb-14 | Wed | 12:48 | - | 24:00 | 100% | Ditto | 0:11:12 | 20:00:30 |
| 27-Feb-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 21:00:30 |
| 28-Feb-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 22:00:30 |
| 01-Mar-14 | Sat | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 23:00:30 |
| 02-Mar-14 | Sun | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 24:00:30 |
| 03-Mar-14 | Mon | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 25:00:30 |
| 04-Mar-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 26:00:30 |
| 05-Mar-14 | Wed | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 27:00:30 |
| 06-Mar-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 28:00:30 |
| 07-Mar-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 29:00:30 |
| 08-Mar-14 | Sat | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 30:00:30 |
| 09-Mar-14 | Sun | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 31:00:30 |
| 10-Mar-14 | Mon | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 32:00:30 |
| 11-Mar-14 | Tue | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 33:00:30 |
| 12-Mar-14 | Wed | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 34:00:30 |
| 13-Mar-14 | Thu | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 35:00:30 |
| 14-Mar-14 | Fri | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 36:00:30 |
| 15-Mar-14 | Sat | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 37:00:30 |
| 16-Mar-14 | Sun | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 38:00:30 |
| 17-Mar-14 | Mon | 00:00 | - | 24:00 | 100% | Ditto | 1:00:00 | 39:00:30 |

| Date | Day | Time | | % | | | Duration | Cumulative |
|---|---|---|---|---|---|---|---|---|
| 18-Mar-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 40:00:30 |
| 19-Mar-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 41:00:30 |
| 20-Mar-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 42:00:30 |
| 21-Mar-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 43:00:30 |
| 22-Mar-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 44:00:30 |
| 23-Mar-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 45:00:30 |
| 24-Mar-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 46:00:30 |
| 25-Mar-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 47:00:30 |
| 26-Mar-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 48:00:30 |
| 27-Mar-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 49:00:30 |
| 28-Mar-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 50:00:30 |
| 29-Mar-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 51:00:30 |
| 30-Mar-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 52:00:30 |
| 31-Mar-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 53:00:30 |
| 01-Apr-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 54:00:30 |
| 02-Apr-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 55:00:30 |
| 03-Apr-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 56:00:30 |
| 04-Apr-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 57:00:30 |
| 05-Apr-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 58:00:30 |
| 06-Apr-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 59:00:30 |
| 07-Apr-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 60:00:30 |
| 08-Apr-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 61:00:30 |
| 09-Apr-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 62:00:30 |
| 10-Apr-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 63:00:30 |
| 11-Apr-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 64:00:30 |
| 12-Apr-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 65:00:30 |
| 13-Apr-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 66:00:30 |
| 14-Apr-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 67:00:30 |
| 15-Apr-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 68:00:30 |
| 16-Apr-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 69:00:30 |
| 17-Apr-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 70:00:30 |
| 18-Apr-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 71:00:30 |
| 19-Apr-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 72:00:30 |
| 20-Apr-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 73:00:30 |
| 21-Apr-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 74:00:30 |
| 22-Apr-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 75:00:30 |
| 23-Apr-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 76:00:30 |
| 24-Apr-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 77:00:30 |
| 25-Apr-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 78:00:30 |
| 26-Apr-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 79:00:30 |
| 27-Apr-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 80:00:30 |
| 28-Apr-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 81:00:30 |
| 29-Apr-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 82:00:30 |
| 30-Apr-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 83:00:30 |
| 01-May-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 84:00:30 |
| 02-May-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 85:00:30 |
| 03-May-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 86:00:30 |
| 04-May-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 87:00:30 |
| 05-May-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 88:00:30 |
| 06-May-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 89:00:30 |
| 07-May-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 90:00:30 |
| 08-May-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 91:00:30 |
| 09-May-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 92:00:30 |
| 10-May-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 93:00:30 |
| 11-May-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 94:00:30 |
| 12-May-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 95:00:30 |
| 13-May-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 96:00:30 |
| 14-May-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 97:00:30 |
| 15-May-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 98:00:30 |
| 16-May-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 99:00:30 |
| 17-May-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 100:00:30 |
| 18-May-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 101:00:30 |
| 19-May-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 102:00:30 |
| 20-May-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 103:00:30 |
| 21-May-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 104:00:30 |
| 22-May-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 105:00:30 |
| 23-May-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 106:00:30 |
| 24-May-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 107:00:30 |
| 25-May-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 108:00:30 |
| 26-May-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 109:00:30 |
| 27-May-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 110:00:30 |
| 28-May-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 111:00:30 |
| 29-May-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 112:00:30 |
| 30-May-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 113:00:30 |
| 31-May-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 114:00:30 |
| 01-Jun-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 115:00:30 |
| 02-Jun-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 116:00:30 |
| 03-Jun-14 | Tue | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 117:00:30 |
| 04-Jun-14 | Wed | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 118:00:30 |
| 05-Jun-14 | Thu | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 119:00:30 |
| 06-Jun-14 | Fri | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 120:00:30 |
| 07-Jun-14 | Sat | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 121:00:30 |
| 08-Jun-14 | Sun | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 122:00:30 |
| 09-Jun-14 | Mon | 00:00 - 24:00 | 100% | | Ditto | | 1:00:00 | 123:00:30 |

| 10-Jun-14 Tue | 00:00 - 24:00 | 100% | | Ditto | 1:00:00 | 124:00:30 |
| 11-Jun-14 Wed | 00:00 - 24:00 | 100% | | Ditto | 1:00:00 | 125:00:30 |
| 12-Jun-14 Thu | 00:00 - 24:00 | 100% | | Ditto | 1:00:00 | 126:00:30 |
| 13-Jun-14 Fri | 00:00 - 24:00 | 100% | | Ditto | 1:00:00 | 175:00:30 |

| DEMURRAGE | 108.96667 DAYS AT | $12,000 | PER DAY | $1,307,600.00 |
| --- | --- | --- | --- | --- |